Case 01-60129   Document 10   Filed in TXSB on 04/16/01   Page 1 of 26

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

APR 1 6 2001   AM

MICHAEL N. MILBY, CLERK OF COURT

| | | |
|---|---|---|
| IN RE: | § | |
| SENTRY OPERATING COMPANY OF TEXAS, INC. | § § § | CASE NO. 01- |
| SENTRY GROUP SERVICES, INC. | § § | CASE NO. 01- |
| SENTRY OPERATING CO. | § § | CASE NO. 01- |
| SENTRY OPERATING WEST, INC. | § § | CASE NO. 01- |
| SENTRY OPERATING COMPANY OF COLORADO, INC | § § § | CASE NO. 01- |
| SENTRY OPERATING COMPANY OF KANSAS, INC. | § § § | CASE NO. 01- |
| SENTRY OPERATING COMPANY OF NEW MEXICO, INC. | § § § | CASE NO. 01- |
| SENTRY SERVICES AGENCY, INC.-DEL | § § | CASE NO. 01- |
| SENTRY SERVICES AGENCY, INC. - NEW MEXICO | § § § | CASE NO. 01- |
| CREMATION SOCIETY OF OKLAHOMA, INC. | § § § | CASE NO. 01- |
| FUNERAL SERVICE MANAGEMENT, INC. | § § | CASE NO. 01- |
| AMEY FUNERAL HOME, INC. | § § | CASE NO. 01- |
| DEBTORS | § § | JOINTLY ADMINISTERED UNDER CASE NO. 01- |

**01-60129-V2-11**

## JOINT LIQUIDATING CHAPTER 11 PLAN



CVAPDF - www.fasttio.com

OF COUNSEL
WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
Edward L. Rothberg
State Bar No. 17313990
1400 Summit Tower
Eleven Greenway Plaza
Houston, Texas 77046
Telephone:     (713) 961-9045
Facsimile:      (713) 961-5341

ATTORNEYS FOR DEBTORS


LOCKE, LIDDELL & SAPP, LLP.
Thomas H. Grace
State Bar No. 00785453
Federal I.D. No. 12618
Elizabeth C. Freeman
State Bar No.  24009222
Federal I.D. No. 24564
600 Travis Street, Suite 3400
Houston, Texas  77002
Phone:  713:  226-1200
Facsimile:  713-223-3717

ATTORNEYS FOR SENIOR SECURED LENDER

# JOINT LIQUIDATING CHAPTER 11 PLAN

Sentry Operating Company of Texas, Inc., Sentry Group Services, Inc., Sentry Operating Co., Sentry Operating West, Inc., Sentry Operating Company of Colorado, Inc, Sentry Operating Company of Kansas, Inc., Sentry Operating Company of New Mexico, Inc Sentry Services Agency, Inc.-del, Sentry Services Agency, Inc. - New Mexico, Cremation Society of Oklahoma, Inc., Funeral Service Management, Inc., Amey Funeral Home, Inc. (collectively the "Debtors") and SCI Loan Services, LLC. f/k/a Provident Services, Inc. - a specialty lending division of Service Corporation International ("Senior Secured Lender") (jointly referred to as "Proponents") in this jointly administered case hereby proposes this Joint Liquidating Chapter 11 Plan pursuant to Section 1121 of the Bankruptcy Code.

# ARTICLE 1

## GENERAL PURPOSES OF THE PLAN

The Debtors are regional owners of funeral homes and suppliers of death care services. Debtors have operations in Texas, Oklahoma, Kansas, Colorado and New Mexico. Collectively the Debtors own and operate 38 funeral homes, two crematoria and one cemetery. This Chapter 11 Plan contemplates Senior Secured Lender making a credit bid for substantially all of the assets of the estate upon plan confirmation. Substantially all of the Debtors employees will be hired by Senior Secured Lender to operate the individual facilities. As additional consideration for purchase of the assets, Senior Secured Lender will consent to the continued use of its collateral to fund all payments under the Plan, including administrative expenses, 100% of all trade claims and fund $100,000 to satisfy the claims of the Subordinated Noteholders, Subordinated Investor Claims and contract

rejection damage claims on a pro-rata basis. The Debtors will review and resolve claims, and make distributions to creditors in the order of priority required by law.

## DEFINITIONS

For purposes of the Plan the following terms shall have the respective meanings specified as follows:

1.1     <u>Administrative Claim</u> shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section.

1.2     <u>Affiliate</u> shall have the meaning set forth in Section 101(f) of the Bankruptcy Code.

1.3     <u>Allowed Claim or Allowed Interest</u> shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Court within the applicable period of limitations fixed by Bankruptcy Rule 3001 or, by order of this Court, (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitations fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. An Allowed Claim may refer to a Secured Claim, a Trade Claim, a General Unsecured Claim, and Administrative Claim or a Priority Claim as the context provides.

1.4     <u>Bankruptcy Code</u> shall mean the Bankruptcy Code, 11 U.S.C. §101 et seq., and any amendments thereof.

1.5     <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the Southern District of Texas, Victoria Division, in which the Debtors' Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

1.6     <u>Bankruptcy Estate</u> shall mean all of the assets owned by the Debtors.

1.7     <u>Bankruptcy Rules</u> shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Bankruptcy Court and local bankruptcy rules as adopted by the Bankruptcy Court.

1.8     <u>Bar Date</u> shall mean _____, 2001, the deadline established by the Bankruptcy Court in the Notice of Commencement of an Expedited Case under Chapter 11 of the Bankruptcy Code, Fixing Meeting of Creditors and Other Dates no later than which proofs of claim must be filed.

1.9     <u>Claim</u> shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against Debtors in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

1.10    <u>Class</u> shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 3.

1.11    <u>Class 1 Claim, Class 2 Claims, Class 3 Claims, Class 4 Claims, Class 5 Claims, Class 6 Claims and Class 7 Interests</u> shall mean the Allowed Claims and Interests so classified in Sections 3.1 through 3.7 respectively.

1.12    Committee shall mean the Official Unsecured Creditors Committee that may be appointed by the Court in the jointly administered case.

1.13    Confirmation Date shall mean the date upon which the Order of Confirmation is entered by the Clerk of the Bankruptcy Court.

1.14    Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

1.15    Creditor shall mean any entity holding a Claim.

1.16    Debtors shall mean Sentry Operating Company of Texas, Inc., Sentry Group Services, Inc., Sentry Operating Co., Sentry Operating West, Inc., Sentry Operating Company of Colorado, Inc, Sentry Operating Company of Kansas, Inc., Sentry Operating Company of New Mexico, Inc Sentry Services Agency, Inc.-Del, Sentry Services Agency, Inc. - New Mexico, Cremation Society of Oklahoma, Inc., Funeral Service Management, Inc., and Amey Funeral Home, Inc.

1.17    Disclosure Statement shall mean the written document filed by the Debtors in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

1.18    Effective Date shall mean the date established by the Confirmation Order.

1.19    Filing Date shall mean April 16, 2001, the date the Debtors filed their petitions under Chapter 11 of the Bankruptcy Code.

1.20    Final Order shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

1.21    General Unsecured Claim shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtors have an interest or

which is not subject to setoff under Section 553 of the Bankruptcy Code or (ii) a Claim that is secured in one of the foregoing manners to the extent the amount of the Claim exceeds the value of the property securing the Claim.

1.22    <u>Holder</u> shall mean the owner or holder of any Claim or Interest.

1.23    <u>Interest</u> shall mean an interest or equity interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of equity security holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

1.24    <u>Order of Confirmation</u> shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.25    <u>Plan</u> shall mean the Joint Liquidating Chapter 11 Plan of Debtors and Senior Secured Lender.

1.26    <u>Priority Claim</u> shall mean any Claim that is defined in Section 507(a)(2)-(8) of the Bankruptcy Code.

1.27    <u>Proponents</u> shall mean the Debtors and Senior Secured Lender.

1.28    <u>Pro-Rata</u> shall mean the proportion that the amount of such Claim bears to the aggregate amount of Claims in each respective Class.

1.29    <u>Secured Claim</u> shall mean a Claim secured by a lien, security interest or other charge against or interest in property in which Debtors have an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

1.30    <u>Senior Secured Lender</u> shall mean SCI Loan Services, LLC, a plan Proponent.

1.31    <u>Subordinated Noteholders</u> shall mean those individuals or entities who sold funeral homes to the Debtors and whose purchase money notes are subordinated to payment of the claim of Senior Secured Lender.

1.32    <u>Subordinated Investor Claims</u> shall mean those equity holders who have loaned money to the Debtors on an unsecured basis and whose claims are subordinated to payment of the claim of Senior Secured Lender.

1.33    <u>Substantial Consummation</u> shall occur on the Effective Date.

A term in this Plan not otherwise defined herein but used in the Bankruptcy Code shall have the definition assigned to such term in the Bankruptcy Code.

## ARTICLE 2

<u>ADMINISTRATIVE AND PRIORITY CLAIMS</u>

2.1    <u>Administrative Claims Bar Date.</u> Any holder of an Administrative Claim against the Debtors, except for expenses incurred in the ordinary course of operating the Debtors' businesses, shall file proof of such Claim or application for payment of such Administrative Claim on or within thirty (30) days after the Confirmation Date, with actual service upon counsel for the Debtors, and Counsel for the Committee, if any, or such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim be entitled to no distribution and no further notices. Administrative Claims include the amount due for U.S. Trustee fees that are unpaid as of the Effective Date. The U.S. Trustee need not file a proof of claim. U.S. Trustee fees which accrue after confirmation shall be treated as an expense in accordance with Section 3.2 and shall be paid by the Debtors until the Chapter 11 case is closed.

2.2    <u>Payment of Administrative and Priority Claims</u>. Each Holder of an unpaid Administrative Claim or Priority Claim shall be paid in cash in full on the later of the Effective Date

or the date such Claim becomes an Allowed Administrative or Priority Claim, unless the Holder of such a Claim agrees to a different treatment.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Plan provides for the division of Claims and Interests into seven Classes.

3.1    <u>Class 1  Allowed Secured Claim of Senior Secured Lender</u>. Class 1 consists of the Secured Claim of Senior Secured Lender secured by a lien on all assets of the Debtors.

3.2    <u>Class 2 Priority Claims</u>.  Class 2 consists of ad valorem tax claimants.

3.3    <u>Class 3  Allowed Trade Claims</u>.  Class 3 consists of trade creditors, necessary for the operation of the funeral homes.

3.4    <u>Class 4  Subordinated Noteholders, Subordinated Investor Claims, and Rejection Damage Claimants.</u>   Class 4 consists of the undersecured and unsecured claims of the Subordinated Noteholders, Subordinate Investors, and contract rejection damage claimants.

3.5    <u>Class 5  Ford Motor Credit</u>.  Class 5 consists of the claims of Ford Motor Credit secured by certain motor vehicles.

3.6    <u>Class 6  Stillwater National Bank</u>.  Class 6 consists of the Claims of Stillwater National Bank secured by certain motor vehicles.

3.7    <u>Class 7  Allowed Interests of Shareholders</u>.  Class 7 consists of the Allowed Interests of Shareholders of Debtors.

# ARTICLE 4

## TREATMENT OF CLASSES UNDER THE  PLAN

4.1     <u>Class 1  Senior Secured Lender Allowed Secured Claim</u>.  The Claims of Senior Secured Lender shall be paid by having its collateral sold free and clear of all liens, claims, interests and encumbrances in accordance with Article 6.  Senior Secured Lender shall receive no distribution on any deficiency claim.  The Class 1 Claim is impaired.

4.2     <u>Class 2 Priority Claims</u>.  The Holders of the Class 2 Claims shall be paid in full on the later of the Effective Date or the date such Claims become Allowed Claims.  The Class 2 Claims are unimpaired.

4.3     <u>Class 3  Allowed Trade Claims</u>.  The Holders of the Class 3 Claims shall be paid 100% of their claims in three equal installments.  The first installment will commence on the later of the Effective Date or the date such Claims become Allowed Claims.  The second installment will be 90 days from the Effective Date and the third installment will be 180 days from the Effective Date.  The Class 3 Claims are impaired.

4.4     <u>Class 4 Subordinated Note Holders, Subordinated Investor Claims and Rejection Damage Claimants.</u>  The Holders of Allowed Class 4Claims shall receive a *pro rata* distribution of their claims from a fund of $100,000 established on the Effective Date.  Distribution will be made to the Holders of Class 4 Claims on the later of the Effective Date or the date such Claims become Allowed Claims.  The Class 4 Claims are impaired.

4.5     <u>Class 5 Ford Motor Credit</u>.  The Proponents shall review the notes and security agreements held by the Class 5  claimant.  If the Proponents decide to retain the collateral, Senior Secured Lender will purchase the collateral in accordance with Article 6 and assume and pay the

notes according to their terms.  To the extent that any particular note and security agreement is not purchased by the Senior Secured Lender, the collateral will be returned to the Class 5 Claim Holder in full satisfaction of the debt.  The Class 5 Claims may be impaired.

4.6     <u>Class 6 Stillwater National Bank</u>. The Proponents shall review the notes and security agreements held by the Class 6  claimant.  If the Proponents decide to retain the collateral, Senior Secured Lender will purchase the collateral in accordance with Article 6 and assume and pay the notes according to their terms.  To the extent that any particular note and security agreement is not purchased by the Senior Secured Lender, the collateral will be returned to the Class 6 Claim Holder in full satisfaction of the debt.  The Class 6 Claims may be impaired.

4.7     <u>Class 7.  Allowed Interests of Shareholders</u>.  The Allowed Interests of the Shareholders of each Debtor shall be canceled.

# ARTICLE 5

## <u>VOTING OF CLAIMS</u>

5.1     Classes 1,3,4, 5, and 6, are impaired and therefore are entitled to vote on this Plan. Accordingly, the acceptances of these Classes of Claims and Interests must be solicited.

5.2     Class 2 is unimpaired and therefore is not entitled to vote.

5.3     Class 7 Interests Holders are not receiving any consideration in exchange for their Interests.  Therefore the Class 7 Interests Holders are deemed to have rejected the Plan.

# ARTICLE 6

# MEANS FOR EXECUTION OF  PLAN

6.1     Substantive Consolidation.  For purposes of the distributions provided for herein, the assets and liabilities of the Debtors shall be substantively consolidated on the Effective Date.

6.2     Sale of Assets.  This Plan shall constitute a motion to sell substantially all of the Debtors' assets, including but not limited to, real estate, furniture, fixtures, equipment, vehicles, inventory, cash, accounts receivable, and general intangibles on a "where as, as is" basis free and clear of all liens, claims, encumbrances, and interests pursuant to Section 363(b) and (f) of the Bankruptcy Code.  The sale shall be a private sale to Senior Secured Lender and shall be held on the Effective Date.  Senior Secured Lender shall be entitled to credit bid up to the full amount of its Claim.  Upon closing, Senior Secured Lender shall hold all purchased assets free and clear of any and all liens, claims, encumbrances, and interests, except for the liens held by the Holders of Class 5 and Class 6 Claims. The sale shall be exempt from all local and state transfer taxes.  Any assets not purchased by Senior Secured Lender shall be surrendered to the secured creditor holding liens on any such assets.

6.3     Additional Purchase Price.  As additional consideration for purchase of the Debtors assets, Senior Secured Lender shall consent to the continued use of its cash collateral to make a payment on the Effective Date, or later as the case may be, to the Debtors of an amount of cash sufficient to pay all Allowed Administrative and Priority Claims in full, to pay the Class 3 Claims in accordance with Section 4.3, and $100,000 to be used to pay on a *pro rata* basis the Class 4 Claims in accordance with Section 4.4.

6.4     Assumption and Assignment.  On the Effective Date, the Debtors shall assume and assign to Senior Secured Lender all executory contracts and leases not expressly rejected pursuant to Article 10 of this Plan.  To the extent any defaults exist in contracts to be assumed, such defaults will be cured by Senior Secured Lender.

6.5     Documentation.  The Debtors, all Creditors and other parties in interest required to execute releases, termination statements, deeds, bills of sale or other documents required by the Plan, shall be ordered and directed to execute such documents as are necessary in order to effectuate the terms of this Plan.  The Bankruptcy Court may determine that the failure of any party to execute a required document shall constitute contempt of the Bankruptcy Court's Confirmation Order, which shall require such documents to be executed in accordance with the terms of the Plan and the Confirmation Order.  On the Effective Date, all documents and instruments contemplated by the Plan not requiring execution and delivery prior to the Confirmation Date shall be executed and delivered by the Debtors, and Creditors, as the case may be.  All documents shall be consistent with the terms of the Plan and shall otherwise be subject to approval as to form by all respective counsel.

6.6     Allowance of Claims Under the Plan.  Allowance is a procedure whereby the Bankruptcy Court determines the amount and enforceability of claims against the Debtors, if the parties cannot agree upon such allowance.  It is expected that the Debtors will file objections to claims of Creditors, if any are deemed necessary, before and after Confirmation of the Plan.  The Plan merely provides for payment of Allowed Claims, but does not attempt to pre-approve the allowance of any Claims.  The deadline for filing objections to claims will be thirty days after the Effective Date, except with respect to claims for contract rejection damage claims.  The deadline for filing objections to contract rejection damage claims shall be twenty days after the deadline for filing such claims.  All Claims for which no objection is timely filed shall be deemed allowed and paid in accordance with the Plan.

6.7     Duties of Debtors.  Subject to the terms and conditions set forth herein, the Debtors shall:

6.7.1    On the Effective Date, in accordance with Section 3.2, and 4.2 the Debtors shall pay Administrative Claims, Priority Claims and Class 2 ad valorem tax claims out of the cash collateral of Senior Secured Lender .

6.7.2    After paying all expenses of administration and priority claims, make distributions to the Holders of Claims as set forth in Article 5 hereof with the cash collateral of Senior Secured Lender;

6.7.3    Make payments hereunder in as prompt, efficient and orderly a fashion as possible.

6.7.4    The Debtors shall file all reports required under law, including state and federal tax returns, and to pay all taxes, if any, incurred by the Bankruptcy Estate.

6.7.5    The Debtors shall be authorized to take any and all actions, including the filing or defense of any civil actions or claim objections necessary to accomplish the above.

6.7.6    The Debtors shall keep or cause to be kept books containing an accounting of all receipts and disbursements, which records shall be open to inspection by any Creditor or Interest Holder at all reasonable times.

6.8    The Debtors shall invest any monies held at any time as a part of the Debtors' assets only in interest-bearing deposits, certificates of deposit, or repurchase obligations of any federally insured banking institution with a combined capital and surplus of at least $25,000,000, or short term investments and obligations of, and unconditionally guaranteed as to payment by, the United States of America and its agencies or instrumentalities, pending the need to make disbursements thereof in payment of costs, expenses, and liabilities of the liquidation or to make a distribution to the creditors hereunder. The Debtors shall be restricted to the collection and holding of such monies and to the payment and distribution thereof for the purposes set forth in this Plan .

6.9    <u>Debtors' Fees and Expenses and Professional Fees and Expenses of the Bankruptcy Estate</u>. All post-confirmation costs, expenses and obligations incurred by the Debtors in administering in any manner connected, incidental or related thereto including attorneys' fees and

expenses, state or federal taxes, shall be paid in full in the ordinary course of business by the use of the cash collateral of the Senior Secured Lender.

6.10    Establishment and Maintenance of Disputed Claims Reserve:

6.10.1  Distributions made in respect of any disputed Claims shall not be made, but shall instead be deposited into Debtors' Counsel's Trust Account. The funds in this account shall be held in trust for the benefit of the holders of all disputed Claims.

6.10.2  Unless and until the Bankruptcy Court shall determine that a good and sufficient reserve for any disputed Claim is less than the full amount thereof, the calculations required by the Plan to determine the amount of the distributions due to the holders of Allowed Claims and to be reserved for disputed Claims shall be made as if all disputed Claims were Allowed Claims in the full amount claimed by the Holders thereof. For purposes of this Section 6.10.2 any Allowed Claim which is not a disputed Claim in its entirety shall be considered a disputed Claim only to the extent of the portion thereof which is disputed and shall be considered an Allowed Claim as to the undisputed portion thereof.

6.10.3  At such time as a disputed Claim becomes an Allowed Claim the distributions due on account of such Allowed Claim and accumulated by the Debtor (including the Pro Rata share of any dividends or interest earned in respect of such distributions) shall be released from the account and paid by the Debtor to the holder of such Allowed Claim.

6.10.4  At such time as any disputed claim is finally determined not to be an Allowed Claim, the amount on reserve in respect thereof shall be released from the account and returned to Debtors for distribution to other creditors.

6.11    Unclaimed Property. If any person entitled to receive distributions under the Plan cannot be located within a reasonable time after the Effective Date, the distributions such Person would be entitled to receive shall be held by the Debtors in an interest-bearing account. If the Person entitled to any such distributions is located within six months after the Effective Date, such distributions, together with any dividends and interest earned thereon, shall be paid and distributed to such Person. If such Person cannot be located within such period, such distributions and any

dividends and interest thereof shall be returned to the Debtors for redistribution to other creditors with Allowed Claims, and such person shall have waived and forfeited his right to such distributions.

6.12   <u>Closing of the Bankruptcy Estate</u>.  The Bankruptcy Estate shall remain open until disposal of all assets of the Bankruptcy Estate, payment of all expenses and escrows in accordance and distribution of all proceeds in accordance with the provisions of Article 6. Thereafter, the Estate shall be closed.

# ARTICLE 7

## CRAMDOWN

In the event any Class rejects the Plan the Proponents will seek to invoke the provisions of Section 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or interests.

**IN THE EVENT ANY CLASS REJECTS THE PLAN THE DEBTORS WILL SEEK TO INVOKE THE PROVISIONS OF 11 U.S.C. §1129(b) AND CONFIRM THE PLAN OVER THE REJECTION OF THE CLASS OR CLASSES. THE TREATMENT AFFORDED EACH CREDITOR IN EACH CLASS IN THE EVENT OF A CRAMDOWN WILL BE THE SAME AS THAT PROVIDED FOR IN THE PLAN AS THE CASE MAY BE.**

# ARTICLE 8

## DEFAULT

8.1   In the event that the Debtors breach any covenant or provision of this Plan, and thereafter fails to remedy or resolve such breach within thirty (60) days from the date of receipt of written notice of such breach, then any Creditor with an Allowed Claim, at its option, may declare

that the Debtors are in default of this Plan. Upon the declaration of default as provided herein, the declarant may exercise any remedies available under law.

# ARTICLE 9

## EXECUTORY CONTRACTS AND LEASES

9.1     The Debtors hereby assume and assign to Senior Secured Lender the executory contracts and leases described on the attached Exhibit A.

9.2     The Debtors hereby reject the executory contracts and leases described on the attached Exhibit B.

9.3     Any Claims arising from rejection of an executory contract or lease must be filed on or before 30 days from the Effective Date. Otherwise, such Claims are forever barred and will not be entitled to share in any distribution under the Plan. Any Claims arising from rejection, if timely filed and allowed, will be paid as Class 4 Claims.

# ARTICLE 10

## MODIFICATION OF THE PLAN

10.1     The Proponents may propose amendments and modifications of this Plan through the Confirmation Date, with leave of the Bankruptcy Court upon appropriate notice. After the Confirmation Date, the Proponents may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of confirmation in such manner as may be necessary to carry out the intendment of this Plan. After the Confirmation Date, the Debtors may, with approval of the Bankruptcy Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such Class; provided,

however, such modifications must be accepted as to Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class; and provided, further, that additional disclosure material needed to support such modification shall be approved by the Bankruptcy Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure. With respect to all proposed modifications to the Plan both before and after confirmation, the Debtors shall comply with the requirements of Section 1127 of the Bankruptcy Code.

10.2    The following are conditions precedent to the effectiveness of the Plan (i) the Plan is confirmed; or (ii) Debtors do not withdraw the Plan at any time prior to the Effective Date.

# ARTICLE 11

## JURISDICTION OF THE BANKRUPTCY COURT

The Bankruptcy Court shall retain exclusive jurisdiction of this case after the Confirmation Date until the case is closed with respect to the following matters:

11.1    To allow or disallow Claims and to hear and determine any controversies pertaining thereto;

11.2    To hear and determine any and all applications, contested matters, or adversary proceedings arising out of or related to this Plan or as otherwise might be maintainable under the applicable jurisdictional scheme of the Bankruptcy Code prior to or after confirmation and consummation of the Plan;

11.3    To enter and implement such orders as may be appropriate in the event the order confirming the Plan is for any reason stayed, reversed, revoked or vacated;

11.4    To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated claim;

11.5    To adjudicate all Claims to any lien on any of the Debtors' assets;

11.6    To approve the sale of any assets of the Debtors and to make such orders as are necessary or appropriate to carry out this Plan;

11.7    To hear and determine matters concerning state, local and federal taxes pursuant to Sections 346, 505, 525 and 1146 of the Bankruptcy Code;

## ARTICLE 12

### EFFECT OF CONFIRMATION

12.1    As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtors, any entity acquiring property under the Plan and any creditor, equity security holder, shareholder in the Debtors, whether or not the Claim or Interest of such creditor, equity security holder, shareholder is impaired under the Plan and whether or not such creditor, equity security holder, shareholder has accepted the Plan.  After confirmation, the property dealt with by the Plan shall be free and clear of all claims and interests of creditors and equity security holders, except to the extent as provided for in the Plan as the case may be.  The Order confirming the Plan shall contain an appropriate provision to effectuate the terms of this motion.

12.2    Confirmation of the Plan shall also serve to enjoin the prosecution of any pre-petition claims, against the Bankruptcy Estate except as provided herein.

12.3    From and after the Effective Date none of the Proponents, the Committee, if any, and none of their respective directors, officers, employees, members, attorneys, consultants, advisors and agents (acting in such capacity), shall have or incur any liability to any Person, including holders of Claims or Equity Interests, for any act taken or omitted to be taken in connection with or related to the filing of this bankruptcy proceeding, the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan (other than an action in contravention of this Plan or its confirmation), the Disclosure Statement related thereto or any contract, instrument, release or agreement or document  created or entered into, or any other act taken or omitted to be taken in connection with the Plan; provided however, that the foregoing shall not affect the liability that otherwise would result from any such act or omission to the extent that such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

12.4    Prior to the Effective Date the Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After the Effective Date, the Debtors shall file with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each month (or portion thereof) the case remains open in a format prescribed by the United States Trustee and provided to the Debtors by the United States Trustee.

12.5    Nothing contained in this  Plan shall be effective, or constitute an admission against interest, or otherwise admissible for any other purpose, unless and until the Effective Date occurs.

12.6    Neither the filing of the Plan, nor Disclosure Statement, nor any statement or provision contained herein, nor the taking by the Debtors of any action with respect to the  Plan shall (I) be or be deemed to be an admission against interest and (ii) until the Effective Date, be or be

deemed to be a waiver of any rights which the Debtors may possess against any other party. In the event that the Effective Date does not occur, neither the Plan, Disclosure Statement nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Debtors' reorganization cases.

Respectfully submitted this _____ day of April, 2001

SENTRY OPERATING CO. OF TEXAS

By: _____

Title: Secretary

SENTRY GROUP SERVICES, INC.

By: _____

Title: Secretary

SENTRY OPERATING CO.

By: _____

Title: Secretary

SENTRY OPERATING WEST, INC.

By: _____

Title: Secretary

SENTRY OPERATING COMPANY OF COLORADO, INC.

By: _____

Title: Secretary

SENTRY OPERATING COMPANY OF KANSAS, INC.

By: _____

Title: Secretary

SENTRY OPERATING COMPANY OF NEW MEXICO, INC.

By: _____

Title: Secretary

SENTRY SERVICES AGENCY , INC. - DEL

By: _____

Title: Secretary

SENTRY SERVICES AGENCY, INC. - NEW MEXICO

By: _____

Title: Secretary

CREMATION SOCIETY OF OKLAHOMA, INC.

By: _____

Title: _____

FUNERAL SERVICE MANAGEMENT, INC.

By: _____

Title: _____

AMEY FUNERAL HOME, INC.

By: _____

Title: _____

OF COUNSEL
WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
EDWARD L. ROTHBERG
State Bar No. 17313990
1400 Summit Tower
Eleven Greenway Plaza
Houston, Texas 77046
Telephone:     (713) 961-9045
Facsimile:     (713) 961-5341

::ODMA\WORLDOX\L:\SEN002\00001\ELR3649.WPD\Version 4\041401

ATTORNEYS FOR DEBTORS

LOCKE, LIDDELL & SAPP, LLP.
THOMAS H. GRACE
State Bar No. 00785453
Federal I.D. No. 12618
Elizabeth C. Freeman
Texas Bar. No. 24009222
Federal I.D. No. 24564
600 Travis Street, Suite 3400
Houston, Texas  77002
Phone: 713:  226-1200
Facsimile:  713-223-3717

ATTORNEYS FOR SENIOR SECURED LENDER

## EXHIBIT A

EXECUTORY CONTRACTS TO BE ASSUMED

[This information will be supplied no later than the date set for the disclosure statement hearing]

# EXHIBIT B

## EXECUTORY CONTRACTS TO BE REJECTED

[This information will be supplied no later than the date set for the disclosure statement hearing]